Blackman *vs*. The State of Georgia.

## BLACKMAN *vs*. THE STATE OF GEORGIA.

1. The power of the legislature to say how the judge of the superior court should satisfy himself as to whether an impartial jury can be obtained in the county, when a motion for change of venue is made, is distinctly recognized by the constitution of 1877. It had been exercised before the constitution was made, and the law then in force on the subject has continued in force ever since. The test prescribed by that law was properly recognized and applied by the court in this case. (Rep.)

(a) Under the express terms of the constitution of 1877, the legislature can change the mode of determining such a motion ; but until they do so, that which has been ordained should be observed. (Rep.)

2. A challenge confined to four jurors is not broad enough to vitiate the array, even though otherwise good. But that jurors, at some previous trial of the prisoner under the same indictment, have been put upon him and one or more of them rejected by him, does not disqualify them, and is not good even as challenge to the poll. (Rep.)

3. Where declarations imputed to a juror are denied by him, and his denial is controverted by the evidence of only one witness, it is

v 80-50

Blackman *vs.* The State of Georgia.

not error to overrule a ground of the motion for a new trial based upon such declarations. Where the answers of a juror on the *voir dire* imported that he had no fixed opinion as to the guilt or innocence of the accused, his mere casual declaration, made before that time, that he believed him guilty because two juries had found him guilty, is altogether reconcilable with such an import of his answers; and such a declaration is not sufficient to justify the setting aside of a verdict found by a jury of whom he was one. (Rep.)

(*a*) A juror is not disqualified by a loose and vague opinion as to guilt or innocence, unless it has been generated by seeing the crime committed or hearing the evidence on oath. (Rep.)

(*b*) *Doyal vs. State*, 73 *Ga.* 72, and *Brinkley vs. State*, 58 *Ga.* 286, cited and distinguished. (Rep.)

4  The complaint that, while the court withdrew from the jury all evidence showing that the prisoner was compelled to make tracks, the opinions of witnesses founded on such compulsive tracks were not also withdrawn from them, is not supported by the facts. If a witness has already formed an opinion upon a set of premises, it does not render such opinion less reliable or less admissible in evidence that other premises not proper for consideration were afterwards superadded. It was for the jury to judge how much the opinion was weakened by withdrawing from it the support of excluded premises. (Rep.)

5.  When evidence is received subject to be ruled out unless something else is proved, the failure to rule it out simply means that, in the opinion of the court, the requisite supplemental evidence has been forthcoming; and such supplemental evidence appears to have been adduced in support of the testimony which, in this case, had been admitted subject to future ruling of the court. (Rep.)

6.  Opening of the case after the argument began for the reception of a court paper in evidence, was in the discretion of the court. That discretion does not appear to have been abused. (Rep.)

7.  The court should not have charged the jury as to that part of §4323 of the code which invests the court with discretionary power to substitute imprisonment for life for the death penalty in cases of conviction on circumstantial evidence; but this impropriety is not cause for not granting a new trial. (Rep.)

8.  It was not error, when certain testimony was offered and objected to, for the court to state his understanding of the object for which it was offered and of its relation to hearsay. (Rep.)

9.  The charge as a whole was not erroneous. Though the verdict is based on circumstantial evidence, and though sentence of death has been pronounced, these are not reasons for granting a new trial. (Rep.)

10. There was sufficient evidence to justify the verdict of the jury, and all the responsibility for their finding on the facts of the case rests upon them. (Rep.)

: June 5, 1888.

Criminal law. Venue. Jury. Challenge. Evidence. Practice. Charge of court. Verdict. Before Judge FORT. Schley superior court. July special term, 1887.

This case has been before the Supreme Court twice. It is reported for the first time in 76 *Ga.* 288, and for the second in 78 *Ga.* 592. It is unnecessary to report the evidence introduced on the third trial in the superior court, as it is not substantially different from that introduced on the two former trials. The evidence was circumstantial, and the prisoner was found guilty and sentenced to death.

The evidence for the State tended to show, as the motive for the killing, jealousy of the deceased by the prisoner, on account of real or supposed illicit intercourse between the deceased and one Onie Black.

The 10th ground of the motion for new trial was as follows: Because when the witness, Doc. Murray, testified that " he (the deceased) sent me after her (Onie Black) to tell her to come up here, he wanted to see her," and defendant moved to rule out the testimony as illegal, irrelevant and the sayings of deceased, the court erred in ruling as follows: " I think what you want to get at is the fact, if it be a fact, of illicit intercourse, and not the saying of the deceased, except to show whether or not this relationship that you claim did exist."

The other material facts in the case are sufficiently stated in the decision.

E. F. HINTON, J. C. MATHEWS and J. S. McCORKLE, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, by brief, and C. B. HUDSON, solicitor-general, for the State.

BLECKLEY, Chief Justice.

1. The court correctly expounded and applied the law touching a change of venue. The constitution restricts change to where the judge is satisfied that an impartial jury cannot be obtained in the county, at the same time declaring that the power is to be exercised in such manner as has been or shall be provided by law. Code, §§5172, 5173. When these provisions were adopted, the acts of 1871 and 1874, embraced in section 4687 of the code, were of force, and they prescribed that the judge shall be satisfied only by an examination, careful and thorough, of the persons liable to serve on juries. In the present case, this was the test recognized and applied by the court; and the case of *Brinkley vs. State*, 54 *Ga.* 371, which had been ruled prior to the adoption of the constitution, holds that the judge was shut up to this mode of inquiry. In argument before us, it was contended that the legislature had no power to say how the judge should satisfy himself, but such a power is, we think, distinctly recognized by the constitution, and moreover it had been exercised before the constitution was made, and the same law then in force on the subject has continued to be in force ever since. No doubt, under the express terms of the constitution, the legislature can change the mode, but until they do so, the judges ought to observe that which has been ordained. By reference to the constitution of 1868, it will be seen that the provisions of that constitution touching the change of venue were the same as those of the constitution of 1877. The 4th and 6th grounds of the motion for a new trial were properly overruled.

2. There was no error in overruling the challenges of the jurors made by the accused, either the challenge to the array or those to the polls. As the matter of challenge was confined to four of the jurors, it was not broad enough to vitiate the array had it been otherwise good. *Eberhart vs. The State*, 47 *Ga.* 646; Code, §4680. But the matter

was not such cause as would avail even as challenge to the polls; for jurors are not disqualified to try a criminal case because at some previous trial they have been put upon the prisoner and one or more of them rejected by him. Their competency as jurors is not impaired by mere acceptance, without actual service, in previous proceedings for the same offence. *Reed vs. The State*, 50 *Ga.* 556. And if acceptance does not destroy competency, why should rejection have that result? This disposes of the 5th, 7th, 8th and 9th grounds of the motion.

3. The 20th and 21st grounds of the motion relate to the competency of the juror Snider. As to the 20th ground, it is enough to say that the declarations imputed to the juror were denied by him, and his denial was controverted by the evidence of only one witness. The 21st ground is based on the theory that the affidavit of Snider himself shows that he was incompetent; but he says in that affidavit that when put upon his *voir dire* he answered conscientiously and truthfully the questions propounded to him by the solicitor-general. Among said questions were these: "Have you any bias or prejudice resting upon your mind, for or against the accused?" "Is your mind perfectly impartial between the State and the accused?" As he was accepted as a juror, we are to take it that his answers to these questions were as to the one affirmative and the other negative; and is the effect overcome by his admission contained in the affidavit, that he had said, " I believe he is guilty, because two juries have found him guilty?" We think not. His answers on the *voir dire* imported that he had no fixed opinion as to the guilt or innocence of the accused; and the mere casual declaration made before that time, that he believed him guilty because two juries had found him guilty, is altogether reconcilable with such an import of his answers. A juror is not disqualified by a loose and vague opinion as to guilt or innocence, unless it has been generated by seeing the crime committed or hearing the evidence on oath; and

such was not the origin of the opinion expressed by this juror. It is natural and proper for every citizen to have some opinion in favor of the correctness of the verdicts of juries; and if following out so general and innocent a law of the human mind is to disqualify all the citizens, we see not how a man could be tried a second time for the same offence if the jurors put upon him had heard of his previous conviction. The belief entertained and expressed by the juror was apparently altogether intellectual, wholly free from any admixture or complication with the emotions or passions. He said nothing indicating that he thought the accused ought to be hanged. There was no fury or ferocity in his expression, no temper like that in *Doyal vs. The State*, 73 *Ga.* 72; *Brinkley vs. The State*, 58 *Ga.* 296. *Prima facie*, this juror was not incompetent. See *Westmoreland vs. The State*, 45 *Ga.* 225; *Fogarty vs. The State*, this term, (80 *Ga.* 450.) If he had, when under examination on his *voir dire*, avowed all that his affidavit disclosed, and if he had been put upon the court as a trior, nothing further appearing as to the nature or fixity of his opinion, the court should have held him competent.

4. The 11th, 12th and 13th grounds of the motion complain that, while the court withdrew from the jury all evidence showing that the prisoner was compelled to make tracks, the opinions of witnesses, founded on such compulsory tracks, were not also withdrawn from the jury. We think this complaint is not altogether supported by the recited facts; for in withdrawing so much of the evidence as relates to tracks of that class, the opinions of witnesses, in so far as they related to such tracks, were also withdrawn. These opinions were evidence relating to tracks. In so far as opinions related, not to compulsory but to voluntary tracks, they were not withdrawn; nor ought they to have been withdrawn. The witnesses saw and inspected tracks of both classes, and the witness, Cockrell, stated distinctly that he thought he was as certain about the tracks before he saw those which the prisoner was compelled to

make as afterwards, and he gave the specific facts on which this independent opinion was based. If a witness has already formed an opinion upon a set of premises, it does not render the opinion less reliable or less admissible in evidence that other premises not proper for consideration were afterwards superadded. It was for the jury to judge how much the opinions were weakened by withdrawing from them the support of the excluded premises, and nothing which the court said or did interfered with the exercise of this power on the part of the jury.

5. The 14th ground of the motion complains that the jury were left to determine on a motion made to exclude the testimony of Murray about carrying messages from Tondee, the deceased, to the woman, Onie Black. The testimony having been admitted subject to future ruling by the court, the failure to announce any ruling was no doubt due to the fact that the State had complied with the terms on which the testimony was provisionally received. And on looking into the record, we find that the State did comply with the terms; for it was shown by the testimony of John Black that the prisoner had information that Murray was concerned in promoting communication between Tondee and Onie Black, the wife of the witness, John Black. When evidence is received subject to be ruled out unless something else is proved, the failure to rule it out simply means that, in the opinion of the court, the requisite supplemental evidence has been forthcoming.

6. The opening of the case after the argument began, for the reception of a court paper in evidence, was a matter within the discretion of the court. No trace of an abuse of such discretion has been shown to us.

7. As was ruled in this same case on its second appearance here, at the October term, 1886, the court should not have charged the jury as to that part of section 4323 of the code which invests the court with discretionary power to substitute imprisonment for life for the death penalty in cases of conviction on circumstantial evidence. But as

was held then, this impropriety is not cause for granting a new trial. There is certainly no reason for charging the jury on the judge's powers exercisable after verdict; but we cannot assume that the jury will be less careful or less conscientious in performing their own functions, because they happen to be enlightened more than necessary on the functions of the judge.

8. What is alleged in the tenth ground of the motion merely amounts to the court's understanding of the object of certain testimony which was objected to, and of its relation to hearsay. We see no error in this.

9. Touching the 17th, 18th and 19th grounds of the motion, we need only say that the whole charge is not error; that though the verdict is based on circumstantial evidence, and that though sentence of death has been pronounced, these are not reasons for granting the prisoner a new trial.

10. Three verdicts have been returned in this case; three times the judge of the superior court has acquiesced in the finding of the jury; three times has this court reviewed the case. On this third writ of error, we find no cause for a new trial. All the responsibility for the facts of the case rests where the law places it—upon the jury. They had, to justify their verdict, evidence against the prisoner of motive, threats, opportunity, presence near the scene of the homicide with a gun on the night of the killing, pretended *alibi*, prevarication and perjury in support of it, and some indication that the footprints made by the assassin corresponded with those of the prisoner. What was said by this court in *Moughon vs. The State*, 59 *Ga.* 309–10, is, in its substance, applicable to the present case and to the state of our own minds concerning it.

Judgment affirmed.