## 63196. GRINER v. THE STATE.

SOGNIER, Judge.

Possession of methaqualone, a controlled substance. Griner contends the trial court erred (1) by denying his motion for a directed verdict of acquittal; (2) by denying his motion for a new trial; and (3) by giving the jury the "Allen" charge (Allen v. United States, 164 U. S. 492 (17 SC 154, 41 LE 528)). Appellant also enumerates as error the failure of the state to inform appellant of an agreement (deal) it made

with a co-defendant in exchange for his testimony against appellant.

1. Enumerations 1 and 2 are based on the general grounds of insufficiency of evidence to support the verdict. The evidence discloses that appellant and Raymond Goodman, a co-indictee, were at the Lakeside Lounge outside Enigma, Georgia. Goodman approached appellant and asked if he had any Quaaludes; appellant stated he would have to get them, and for Goodman to check again in 20 or 30 minutes. About 40 minutes later Goodman again approached appellant, who said he had the Quaaludes. The two men went into the bathroom and entered a stall with a half-door, which they locked. According to Goodman, he gave appellant $6.00 and appellant was getting two tablets out of a plastic bag when a private security officer and two police officials opened the stall door. Goodman testified that appellant then dumped the Quaaludes in the commode, and they were retrieved by the security officer. However, the security officer and a deputy sheriff both testified that Goodman had the plastic bag and threw it in the commode. The two men were arrested and taken to jail. A search of the men failed to reveal any contraband on Goodman or appellant.

Appellant contends that Goodman's testimony as an accomplice was uncorroborated and, thus, is insufficient to support the verdict. "[T]o sustain a conviction in a felony case upon the testimony of an accomplice, there must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime charged, or lead to the inference that he is guilty, and more than sufficient merely to cast on the defendant a grave suspicion of guilt." *Vaughn v. State,* 139 Ga. App. 565, 568 (228 SE2d 741) (1976); *Black v. State,* 155 Ga. App. 798 (272 SE2d 762) (1980). In the instant case there is independent evidence of the security guard and a deputy sheriff that appellant and Goodman were together in a bathroom stall with the door locked; that neither of them was using or had used the commode; and that Goodman was holding a plastic bag containing tablets which he dumped in the commode. Such evidence is sufficient corroboration to directly connect appellant with the crime charged. "If the verdict is founded on slight evidence of corroboration [of an accomplice] connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence. [Cit.]" *Smith v. State,* 238 Ga. 640, 642 (235 SE2d 17) (1977). See also *Green v. State,* 139 Ga. App. 652, 653 (1) (229 SE2d 129) (1976). The sufficiency of the corroboration of the testimony of an accomplice is a matter for the jury to determine. *Smith; Green,* supra.

Appellant also contends that Goodman was "totally impeached" by evidence of prior felony convictions, by proof of

perjury and by other state witnesses. Thus, argues appellant, the only witness who could place appellant in actual or constructive possession of the Quaaludes was discredited. We do not agree.

We have already held that Goodman's testimony was corroborated sufficiently by other witnesses to support the verdict. The weight of the evidence and credibility of witnesses are for the jury's determination. *Armour v. State,* 154 Ga. App. 740 (270 SE2d 22) (1980). Further, the credit to be given a witness' testimony where impeached is for the jury. Code § 38-1806. " ' "[A]lthough a witness may have been successfully impeached, it is left to the discretion of the jury to decide whether his testimony has been corroborated . . ." ' " *Fulmer v. State,* 74 Ga. App. 298, 299 (2) (39 SE2d 732) (1946). See also *Wooster v. Boles,* 130 Ga. App. 542, 544 (203 SE2d 745) (1974).

Appellant also contends that mere presence at the scene of the crime is not sufficient to support a conviction. While we agree with that principle of law, it has no application in the instant case. Goodman testified that appellant sold him two Quaalude tablets in the bathroom stall before the police arrived. This testimony shows more than "mere presence" and is sufficient, if believed, to establish that appellant had the Quaaludes in his possession. Thus, this contention is without merit. A directed verdict of acquittal may be granted only when there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law. Code § 27-1802 (a). As a verdict of acquittal was not demanded as a matter of law, it was not error to deny appellant's motion for a directed verdict of acquittal. *Sims v. State,* 242 Ga. 256, 257 (1-3) (248 SE2d 651) (1978). We also find that a rational trier of fact could reasonably have found from the evidence adduced at trial proof of appellant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Accordingly, Enumerations 1 and 2 are without merit.

2. Goodman testified on cross-examination that he had not been informed that the charges would be reduced or that he would receive any special treatment if he testified against appellant. He also testified that no one informed him of how much time (on his sentence) he would receive or what recommendations might be made to the court at his trial. The defense then called an assistant district attorney who testified that a pretrial agreement had been made with Goodman's attorney whereby a fine and a probated sentence would be recommended in exchange for Goodman's truthful testimony against appellant. Appellant, relying on Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104), contends the state's failure to disclose the "deal" before trial, and to knowingly allow the state's "star witness" to testify falsely concerning his knowledge of the

pretrial agreement, was error. However, in Giglio, the key witness was a co-conspirator, and the government agreed not to prosecute him if he would testify against Giglio. The witness testified, falsely, that there was no agreement not to prosecute him, and the prosecutor made no effort to correct the "deliberate deception" of the court and jurors.

We point out first that there is nothing to indicate that Goodman testified falsely about a pretrial agreement with the district attorney. Goodman testified only that *he was not aware* of any agreement, and neither his attorney nor anyone else had informed him about a pretrial agreement in his case. This was corroborated, in part, by the assistant district attorney, who testified that he had never talked to Goodman about a pretrial agreement in exchange for his testimony.

As to the state's failure to disclose such an agreement before trial, thus deceiving the court and the jury, that issue became moot when the assistant district attorney testified before the jury as to the existence and terms of the pretrial agreement. Thus, Giglio is not applicable to the instant case. Further, the U. S. Supreme Court pointed out in Giglio that a new trial is required only if the false testimony could in any reasonable likelihood have affected the judgment of the jury. Since Goodman's testimony on this issue was not shown to be false, and the court and the jury were made aware of the terms of the pretrial agreement during the trial, there is no likelihood that any state action in not disclosing such information prior to trial could have affected the judgment of the jury. Accordingly, this enumeration of error is without merit.

3. Finally, appellant contends the trial court erred in giving the jury the "Allen," or "dynamite," charge. See Allen v. United States, supra. After about two hours deliberation, the court called the jury in and asked whether it had reached a verdict. The jury stated they had a hung jury, split seven to five. The trial court then asked if the defense counsel objected to the court giving the Allen charge, and counsel replied that he did object to such a charge. The court then asked: "Well, if you would object to it — would you object to it at 9:00 in the morning or do you object to it simply because Judge Blitch tried the case and I'm fixing to give the charge?" Appellant contends this question prejudiced the jury; that it was wrong for Judge Knight to give the Allen charge after Judge Blitch had tried the case; and the Allen charge should not have been given when the jury had only been out two hours.

As to giving the Allen charge after only two hours, we have held: "The decision of whether to give a jury in disagreement the 'Allen' charge is generally left in the discretion of the trial judge." *Thornton*

*v. State,* 145 Ga. App. 793, 794 (245 SE2d 22) (1978). We find no abuse of discretion in giving the charge after the jury announced it was a hung jury.

In regard to Judge Knight giving the charge in the absence of Judge Blitch, appellant enumerates the error for the first time on appeal. In fact, he affirmatively waived any objection to Judge Knight handling the case at that point in the trial. It is well-settled that matters not objected to at trial cannot be raised for the first time on appeal. *Scott v. State,* 243 Ga. 233, 234-235 (253 SE2d 698) (1979).

As to the judge's remarks, they were made only to clarify appellant's objection, i.e., whether he was objecting to Judge Knight giving the charge, or would he have the same objection the following morning when Judge Blitch was again available. Appellant's counsel stated he did not object to Judge Knight, but "I feel that the Allen Charge is not demanded at this time after a jury has only been deliberating for just two hours." It is clear that there was nothing improper in the judge's question, as he was clarifying whether appellant objected to giving the "Allen" charge, or objected to Judge Knight giving the charge in the absence of Judge Blitch. We find nothing in the transcript to support appellant's contention that the trial judge was trying to influence the jury or force them into rendering a verdict. Appellant has cited no authority to support his contention of duress and the charge given by the judge was not otherwise improper. See, generally, *Barnes v. State,* 245 Ga. 609, 611 (5) (266 SE2d 212) (1980).

As to whether the trial judge's remarks made in the presence of the jury during a colloquy on appellant's objection to the Allen charge were prejudicial, see *Aldridge v. State,* 236 Ga. 773, 775 (4) (225 SE2d 421) (1976), wherein the Supreme Court held that "the defendant cannot now raise, [for the first time] on appeal, the contention that it was error for the court to permit such colloquy in the presence of the jury." Accordingly, this enumeration of error is without merit.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

Decided April 29, 1982.

*Mike Bennett,* for appellant.
*Vickers Neugent, District Attorney,* for appellee.